[No. S062489. Aug. 31, 1998.]

BANK OF AMERICA, Plaintiff, Cross-defendant and Respondent, v. FELISA V. LALLANA, Defendant, Cross-complainant and Appellant.

## COUNSEL

Andrew J. Ogilvie, Chimicles, Jacobsen & Tikellis, Kramer, Kaslow & Grannan, Kraslow, Grannan & Lipson and Patrick J. Grannan for Defendant, Cross-complainant and Appellant.

Lillick & Charles, Stephen Oroza, Walter T. Johnson and James S. Monroe for Plaintiff, Cross-defendant and Respondent.

Steefel, Levitt & Weiss, Harvey L. Leiderman and Julie B. Landau as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

## OPINION

**KENNARD, J.**—Under California law, a secured creditor who sells the collateral after the debtor's default may be entitled to a judgment for the difference between the amount owed and the proceeds of the sale. To obtain such a deficiency judgment, however, the creditor must satisfy certain statutory requirements. For secured debts subject to its provisions, the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, § 2981 et seq.; hereafter the Rees-Levering Act) requires that a creditor, before selling a repossessed car, notify the debtor of the right to redeem the car before sale. (Civ. Code, § 2983.2.) For secured debts subject to its provisions, the California Uniform Commercial Code provides that a secured creditor must give a defaulting debtor notice as specified by statute of either a public or private sale of the repossessed collateral. (Cal. U. Com. Code, § 9504, subd. (3).)[1]

Here, a creditor notified a defaulting debtor that it would sell the debtor's repossessed car, giving the kind of notice required under the California Uniform Commercial Code for a *private* sale. It then advertised in local newspapers that at a certain time and place it would conduct a public auto auction. There, it sold the debtor's car to the highest bidder without ever telling the debtor when or where the auction would occur, information that the California Uniform Commercial Code requires in a notice of a *public* sale. The creditor contends that it did not have to tell the debtor when or where the auction would be held because it need comply only with the provisions of the Rees-Levering Act, not those of the California Uniform Commercial Code. The creditor also contends that in any event it complied with the requirements of the California Uniform Commercial Code because it gave the debtor a private sale *notice*, which according to the creditor makes the subsequent sale a private sale irrespective of the characteristics of the sale.

Rejecting these contentions, we conclude, first, that the creditor was required to comply with the relevant provisions of both the Rees-Levering Act and the California Uniform Commercial Code, and, second, that the

---

[1]To distinguish between our Commercial Code and the Uniform Commercial Code, which in some form or other has been adopted in every state, we refer to our code as the California Uniform Commercial Code. (See *Goldie* v. *Bauchet Properties* (1975) 15 Cal.3d 307, 314-315 [124 Cal.Rptr. 161, 540 P.2d 1, 99 A.L.R.3d 794].)

creditor's action in giving a private sale notice did not make the subsequent sale a private sale. Because the creditor violated the relevant provisions of the California Uniform Commercial Code by holding a public sale without giving the debtor proper notice of a public sale, the creditor is precluded from obtaining a deficiency judgment.

## I.

In February 1991, defendant Felisa V. Lallana (hereafter Lallana) bought a car on credit from a dealer, who assigned the contract and the security agreement to plaintiff Bank of America (hereafter Bank). When Lallana failed to make several payments, Bank repossessed the car. In November 1991, Bank notified Lallana that if she did not redeem the car or reinstate the contract within 15 days, it would sell the car. This met the notice requirements for a private sale but not a public sale.

Forrest Faulknor & Sons (hereafter Faulknor) was Bank's vendor. Faulknor advertised its weekly sales of repossessed cars in local newspapers of general circulation and in specialized newspapers as "public auto auction[s]" and as "open to the public sealed bid auto auction[s]." Owner Michael Faulknor testified that the firm's practice was to conduct sealed bid auctions, open to the public, instead of live auctions, because of its experience that sealed bid auctions, at which the bidders do not know the amount others are bidding, resulted in higher prices. The firm would collect sealed bids for two days, after which it would open the bids and sell the cars to the highest bidder. If the highest bid was below Bank's minimum price, the process would be repeated until either Bank's minimum price was met or exceeded or Bank authorized a sale below the minimum price.

On December 5, 1991, Faulknor advertised that it would conduct an "open to the public sealed bid auto auction." It then showed Lallana's car, with others, at a two-day auction conducted on December 16 and 17, 1991, and at three subsequent auctions. Bank did not bid at any of the auctions. On January 6, 1992, the car was sold at a sealed bid auction for $5,000. This was less than the Kelly Blue Book's estimated wholesale value of $12,050 and estimated retail value of $14,820 and less than the minimum price set by Bank, which approved the sale.

On November 24, 1992, Bank sought a deficiency judgment against Lallana for $11,249.84, representing the difference between what she still owed on the car and the $5,000 resale price. Lallana cross-complained for an injunction and restitution. She asserted that Bank's practice of giving notice of a *private* sale but then, without complying with the notice requirements

for a public sale, conducting a *public* sale, was contrary to the California Uniform Commercial Code and was therefore an unfair business practice under Business and Professions Code section 17200, a claim that the trial court rejected but the Court of Appeal accepted.[2] The Court of Appeal remanded the case to the trial court to rule on Lallana's request for injunctive and restitutionary relief. This court granted Bank's petition for review.[3]

## II.

We first determine whether a secured creditor wishing to sell a repossessed car need comply only with the notice requirements of the Rees-Levering Act (Civ. Code, § 2981 et seq.) or whether it must also satisfy the California Uniform Commercial Code's requirements pertaining to the sale of collateral. Bank's notice of sale complied with the Rees-Levering Act by informing Lallana: "If you have not reinstated the contract or redeemed the vehicle within the time shown above, including the extended period (if properly requested) the vehicle will be sold after that period . . . ." But the notice did not disclose the time and place of the sale, as California Uniform Commercial Code section 9504, subdivision (3) requires in the event of a public sale. Bank contends it did not have to comply with that provision of the California Uniform Commercial Code. We disagree.

The pertinent statutory provisions are these:

Civil Code section 2983.2, subdivision (a), which is a part of the Rees-Levering Act, states that a creditor must give the debtor 15 days' written notice by personal service, certified mail, or first class mail of its intent to dispose of a repossessed car. It then states that, "*[e]xcept as otherwise provided in Section 2983.8*, [a debtor] shall be liable for any deficiency after disposition of the repossessed . . . motor vehicle," if the creditor gives the requisite notice within 60 days of repossession and provides the debtor with the statutorily specified information. (Italics added.)

Civil Code section 2983.8, also part of the Rees-Levering Act, reads: "*Notwithstanding Section 2983.2 or any other provision of law*, no deficiency judgment shall lie in any event in any of the following instances: [¶] . . . [¶] (b) After any sale or other disposition of a motor vehicle unless the court has determined that the sale or other disposition was in conformity with the provisions of this chapter *and* the relevant provisions of Division 9 (commencing with Section 9101) of the Commercial Code, *including Section 9504*." (Italics added.)

---

[2]This appeal involves only Lallana's cross-complaint. Bank's claim for a deficiency judgment has been settled.

[3]Bank's petition for review challenges only the Court of Appeal's holding that it violated applicable provisions of the California Uniform Commercial Code. It did not challenge the Court of Appeal's further holding that the violation was an unfair business practice under Business and Professions Code section 17200. Therefore, we do not address this issue.

Under California Uniform Commercial Code section 9504, subdivision (2)(b), the debtor is liable for a deficiency "only (i) if the debtor was given notice, if and as required by subdivision (3), of the disposition of the collateral in accordance with subdivision (3), and the disposition of the collateral by the secured party pursuant to this section was conducted in good faith and in a commercially reasonable manner . . . ."

Turning to subdivision (3) of California Uniform Commercial Code section 9504, it states at the outset that a secured creditor must act in good faith and in a commercially reasonable manner in the sale of the collateral. It requires the creditor to give the debtor "notice in writing of the time and place of any *public* sale *or* of the time on or after which any *private* sale or other intended disposition is to be made." (Italics added.) If it is a *public* sale, notice of its time and place must be published in a newspaper of general circulation before the sale. The secured creditor is allowed to purchase the collateral at a public sale but, except in limited circumstances, not at a private sale.

Bank asserts that in providing that a creditor is not entitled to a deficiency judgment from the debtor unless it complies with both the Rees-Levering Act and division 9 of the California Uniform Commercial Code, "including Section 9504," the Legislature intended to incorporate only the "commercial reasonableness" requirements of California Uniform Commercial Code section 9504, subdivision (3), not its notice requirements. Bank is wrong. As the Court of Appeal noted, "Contrary to the Bank's argument, there is nothing in [the language of Civil Code section 2983.8] or the nature of subdivision (3) of section 9504 to permit us to conclude the Legislature intended only to incorporate the commercial reasonableness standard, but not the notice requirements contained therein."

Equally misplaced is Bank's reliance on *Creditors Bureau* v. *De La Torre* (1971) 16 Cal.App.3d 558 [94 Cal.Rptr. 145]. There the Court of Appeal held that a secured creditor need comply only with the notice requirements of the Rees-Levering Act, and not with "the general provisions of the [California Uniform] Commercial Code." (*Id.* at p. 562.) But that case was decided in 1971, well before the Legislature in 1984 amended Civil Code section 2983.8 by adding subdivision (b). (Stats. 1984, ch. 1376, § 1, p. 4859.) As previously explained, that provision expressly requires the creditor to comply not only with the Rees-Levering Act but also with division 9 of the California Uniform Commercial Code. Therefore, the case is inapposite.

Bank also asserts that the Rees-Levering Act, which creates a broad range of consumer protections for those who buy cars on credit, is a specific statute

and therefore controls over the general provisions of the California Uniform Commercial Code. ■ Bank relies on the general rule of statutory construction " 'that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].) ■ It is not necessary here, however, to resort to this rule of statutory construction because the Legislature has expressly described how the Rees-Levering Act and the California Uniform Commercial Code interrelate. (See *Murillo* v. *Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 992 [73 Cal.Rptr.2d 682, 953 P.2d 858] [rule inapplicable when statutes are not inconsistent].) After providing in Civil Code section 2983.8, subdivision (b) that a creditor's sale or disposition of a repossessed car must comply with both the Rees-Levering Act and the relevant provisions in division 9 of the California Uniform Commercial Code, the Legislature expressly states in California Uniform Commercial Code section 9203, subdivision (4) that the Rees-Levering Act controls in the event of a statutory conflict. Here, the relevant provisions in both codes do not create a conflict.

Accordingly, we hold that to obtain a deficiency judgment, a secured creditor who sells a defaulting debtor's repossessed car must do so in a manner that complies not only with all the provisions of the Rees-Levering Act but also with any relevant provisions in division 9 of the California Uniform Commercial Code. We now address whether Bank's sale of Lallana's car complied with the notice requirements in division 9 of the California Uniform Commercial Code, specifically those in subdivision (3) of section 9504.

### III.

■ Bank contends that the Court of Appeal erred in holding that Bank violated California Uniform Commercial Code section 9504, subdivision (3) by giving *notice* of a *private* sale but then holding a public sale, without complying with the notice requirements for a public sale. Contending that it did not hold a public sale, Bank relies on this language in subdivision (3) of California Uniform Commercial Code section 9504: "Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale."[4] Bank insists that this sentence contains the complete definition of a "public sale." Bank argues that because

---

[4]Section 9504, subdivision (3) reads: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is

it gave notice of a private sale, the sale it held was a private sale, irrespective of the characteristics of the sale.

The sentence on which Bank relies fails to describe the characteristics of a public sale. The quoted sentence states that a sale conducted "as herein provided" is a public sale, but there is no description of a public sale in the subdivision in which this sentence appears. Nor is there such a description elsewhere in the statute. The statute sets forth in detail when and how notice is to be given the debtor, the requirements for publication of public sales in newspapers, where public sales are to be held, and how a public sale may be postponed, but it says nothing about the characteristics of a public sale. The sentence certainly does not imply that any sale for which *defective* notice of public sale has been given qualifies as a private sale, no matter how public the character of the sale.

In enacting subdivision (3) of California Uniform Commercial Code section 9504, our Legislature sought to clarify the requirements for a *notice* of the time and place of a public sale, not to define the characteristics of a

---

perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his or her address (before that secured party sends his or her notification to the debtor or before debtor's renunciation of his or her rights), a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail . . . at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held or in case no newspaper of general circulation is published in the county in which the sale is to be held, in a newspaper of general circulation published in the county in this state that (1) is contiguous to the county in which the sale is to be held and (2) has, by comparison with all similarly contiguous counties, the highest population based upon total county population as determined by the most recent federal decennial census published by the Bureau of the Census. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his or her residence or chief place of business, or in the county in which the secured party has his or her residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and that is held as herein provided is a public sale."

public sale. The Legislature rejected the Uniform Commercial Code's version—as contained in section 9-504, which requires only "reasonable notification of the time and place of any public sale"—because the Uniform Commercial Code "does not specify either the manner in which notice must be given or the time within which it must be given." (Sen. Fact Finding Com. on Judiciary, Sixth Progress Rep. to Leg., pt. 1 (1959-1961) Cal. U. Com. Code, p. 426.) The Senate Committee pointed out that the Uniform Commercial Code's general requirement "that every aspect of the sale be done in 'a reasonably commercial' manner is too vague a requirement to be of any value and . . . an invitation to litigation." (*Ibid.*) These concerns led our Legislature to conclude that "both the time and manner of giving notice should be specified, otherwise every sale is open to attack." (*Ibid.*) Accordingly, California Uniform Commercial Code section 9504, subdivision (3) defines in detail the notice requirements for both public and private sales: A notice of *public* sale informs the debtor of the time and place of sale. A notice of *private* sale requires only that the debtor be told the collateral will be sold after the expiration of a certain period. The provision does not at all define public sale.

## IV.

We now determine whether Bank sold Lallana's repossessed car at a public sale or a private sale. As discussed above, California Uniform Commercial Code section 9504 does not define these terms. Nor does its counterpart in Uniform Commercial Code section 9-504. Of assistance here are decisions from other jurisdictions, which have undertaken the task of determining the characteristics of public and private sales under Uniform Commercial Code section 9-504, subdivision (3).

"Public sale" has been described as follows: " 'A sale of collateral is "public" when it is publicly advertised, the sale is open to the public, and the sale is made, after competitive bidding, to the highest genuine bidder; as at an auction. [¶] The opportunity of the public to bid at the sale is the essential criterion that determines that the sale is a public sale . . . .' " (*Beard* v. *Ford Motor Credit Co.* (1993) 41 Ark.App. 174 [850 S.W.2d 23, 27-28], quoting 9 Anderson, Uniform Commercial Code (3d ed. 1985) § 9-504:32, p. 733; see, e.g., *Bank of Houston* v. *Milam* (Mo.Ct.App. 1992) 839 S.W.2d 705, 708; *Chrysler Dodge Country* v. *Curley* (Utah Ct.App. 1989) 782 P.2d 536, 539; 2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 27-10, p. 594, quoting *Lloyd's Plan, Inc.* v. *Brown* (Iowa 1978) 268 N.W.2d 192, 196.) Courts have "stressed that a public sale is one open to the general public or a major segment thereof, and thus contemplates advertising of the notice, time, and place of sale." (2 White & Summers, *supra,* at p. 594.)

By contrast, a private sale "is not open to the general public, usually does not occur at a pre-appointed time and place, and may or may not be generally advertised." (2 White & Summers, Uniform Commercial Code, *supra,* § 27-10, p. 594.) As one commentator has observed, "[a] *private sale* is best described as any transaction that is not a *public sale*." (Sheneman et al., Cal. Foreclosure: Law and Practice (1997) § 2.03, p. 2-19.)

Contrary to Bank's assertion, the use of sealed bids at an auction open to the public does not turn an otherwise public sale into a private sale. *Boatmen's Nat. Bank* v. *Eidson* (Mo.Ct.App. 1990) 796 S.W.2d 920, a decision on which Bank relies, erred in stating that competitive bidding requires "knowledge of the highest bid with an opportunity to bid higher." (*Id.* at p. 923.) The use of sealed bids, which are those submitted without knowledge of what others have bid, *is* a competitive process, as discussed below.

At trial, Lallana's expert explained the competitive nature of sealed bid auctions as follows: "[A] bidder in a sealed bid auction takes into account the kinds of factors that are involved in any kind of auction, makes some evaluation of what the item that is being bid for is worth to that bidder . . . [and] tries to make some assessment of what others are likely to be bidding so that he can place a bid, that this—is sufficient to win. The thing that identifies it as a competitive [auction] to me is the response that the bidder makes, for example, to the increase in the number of bidders or other factors affecting value. If there is an increase in the number of bidders, a competitor in the sealed bid auction will bid more, clearly recognizing the presence of other bidders and the likelihood that a higher bid is needed to be successful in the auction. Those sorts of factors suggest the presence of the competition in that auction." Likewise, Michael Faulknor, an owner of the firm that conducted the auction here, testified that bidders at sealed bid auctions are competing against others.

In addition, our law permits public sales by means of sealed bids. (See, e.g., Gov. Code, § 5808, subd. (a) [public sale of corporate securities by sealed bids]; *id.,* § 15832 [public sale of bonds by sealed bid]; *id.,* § 53569 [public sale for refunding bonds by sealed bids]; Ins. Code, § 1063.56 [public sale of insurance assessment bonds by sealed bids].)

To summarize, applying the above stated definition of a public sale—collateral sold to the highest bidder after competitive bidding at an auction advertised to and open to the public—we conclude that Bank's public auction of Lallana's car was a public sale. Bank advertised the sale as a public sale; Bank invited the public to attend the sale and bid; the public did attend the sale and bid; and the car was sold to the highest bidder.

Although Bank conducted a public sale, it never gave Lallana notice of a public sale. This would entail informing Lallana of the time and place of sale. (Cal. U. Com. Code, § 9504, subd. (3).) "The purpose of notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser, or to see that the sale is conducted in a commercially reasonable manner." (*Buran Equipment Co.* v. *H & C Investment Co.* (1983) 142 Cal.App.3d 338, 341 [190 Cal.Rptr. 878]; accord, *Ford & Vlahos* v. *ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1232-1233 [36 Cal.Rptr.2d 464, 885 P.2d 877] [one purpose of the notice "is to alert the debtor and other secured creditors to take steps to protect their interests, possibly including locating bidders for their collateral . . . ."].) As Lallana observes, without notice of the time and place of sale, the debtor is denied the opportunity to determine whether the sale is conducted in a commercially reasonable manner, to encourage others to bid on the property, or to view the property to ascertain damage, if any, after repossession.[5]

 When, as here, the creditor gives the debtor a notice of private sale but then holds a public sale, the creditor has not complied with the law. (*First Nat. Bank of Belen* v. *Jiron* (1987) 106 N.M. 261 [741 P.2d 1382, 1384] ["A notice of a private sale is insufficient to comply with Section 55-9-504(3) if the type of sale actually held is public . . . ."]; *Associates Financial Services Co., Inc.* v. *DiMarco* (Del.Super.Ct. 1978) 383 A.2d 296, 299 [creditor "could not give notice of private sale as a preliminary step culminating in a public sale"]; 2 White & Summers, Uniform Commercial Code, *supra*, § 27-12, p. 601 [courts generally hold that a "notice that leads the debtor to believe the creditor plans one type of sale (private or public), but the creditor subsequently holds the other type . . . does not satisfy 9-504(3)"]; see also Annot., Sufficiency of Secured Party's Notification of Sale or Other Intended Disposition of Collateral Under UCC § 9-504(3) (1982) 11 A.L.R.4th 241, 297-300.)

CONCLUSION

The Legislature has given a creditor the choice of selling repossessed collateral at either a public sale or a private sale. When the creditor holds a private sale, it must comply with the private sale *notice* requirements (notice of the date after which collateral will be sold). When it holds a public sale, it must comply with the public sale *notice* requirements (notice of both the

---

[5]At trial Lallana offered evidence suggesting that after Bank's repossession the car had been in a major accident. Had she been present at the auction she could have inspected the car for post-repossession damage. The trial court, however, sustained Bank's objection on hearsay grounds.

time and place of sale), certainly not an onerous burden. But the creditor may not, as here, circumvent the notice requirements for a public sale simply by giving notice of a private sale and then holding a public sale. " '[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment.' " (*Backes* v. *Village Corner, Inc.* (1987) 197 Cal.App.3d 209, 216 [242 Cal.Rptr. 716].)

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Werdegar, J., and Elia, J.,* concurred.

**BROWN, J.**—I dissent.

This is a statutory construction case. By its terms, California Uniform Commercial Code[1] section 9504, subdivision (3) (section 9504(3)), defines both private and public sales. In addition, the legislative history of section 9504(3) reveals that over 30 years ago, the Legislature sought to provide specific instructions to secured creditors regarding how to conduct a valid foreclosure sale. The sale here was not "public" within the meaning of section 9504(3), but "private"; it falls within the wide latitude given to secured creditors to conduct a private sale in the manner that will best ensure the highest possible price for the collateral and consequently a lower deficiency for the debtor.

The majority, however, finds itself neither bound by the statute's language nor guided by its legislative history. Rather, it relies solely on out-of-state authority construing a different statute not contained in the California Uniform Commercial Code to reach its result. Moreover, the majority's result fails to assist debtors in any meaningful way. The majority does not conclude that private sales are disallowed by the California Uniform Commercial Code, or that a debtor has any right under the code to attend such a sale. Rather, it concludes that advertising and inviting the public to a sale automatically renders the sale "public" regardless of the form of notice or whether the criteria for a private sale are satisfied. By so holding, the majority does little but encourage clandestine private sales. While a secured creditor might benefit from such a result if the debtor has the resources to pay a deficiency judgment, the debtor, who has an intrinsic interest in the creditor being repaid from the resale of the collateral, not through collection

---

*Associate Justice of the Court of Appeal, Sixth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

of a deficiency, never will. I would therefore reverse the judgment of the Court of Appeal.

Plaintiff Bank of America (Bank) repossessed defendant Felisa V. Lallana's Mitsubishi Eclipse. It gave notice to her that the vehicle would be sold at a private sale. The amount subsequently received at the sale failed to satisfy Lallana's debt, and the Bank filed suit against her seeking a deficiency judgment. Lallana cross-complained for an injunction and restitution for herself and on behalf of the general public, alleging the Bank engaged in unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200. As pertinent here, she alleged that the Bank sold its repossessed vehicles at public sales, and routinely failed to notify defaulting borrowers of the time and place of these sales as required by section 9504(3).

The Court of Appeal concluded that the Bank's notice of intent to sell must comply with not only the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.) (Act), but also with section 9504(3). It further concluded that the sale in this case was a public not private sale. Accordingly, because the Bank failed to give Lallana notice of the time and place of the public sale as required by section 9504(3), it was barred from recovering a deficiency judgment against her, and its attempt to do so constituted an unlawful business practice in violation of Business and Professions Code section 17200 et seq.

While I agree with the majority that both the Act and section 9504(3) apply to the Bank's notice of intent to sell Lallana's repossessed vehicle, I disagree that the sale was public.

## I. Facts and Procedural Background

Lallana and her son-in-law Sherden Williams[2] purchased a 1991 Mitsubishi Eclipse on credit pursuant to a conditional sales contract with the car dealer. The dealer assigned the contract and security agreement to the Bank. After Lallana defaulted on several car payments, the Bank repossessed the vehicle. On or about November 1, 1991, the Bank sent Lallana a "Notice of Intent to Sell Repossessed or Surrendered Vehicle" informing her of her right to redeem the vehicle or reinstate the contract within 15 days from the date of the notice. The notice also informed her that if she did not redeem the vehicle or reinstate the contract within that time or any extension thereof, the Bank would sell the vehicle after that period. The Bank concedes its notice did not inform Lallana of the time and place of the sale.

---

[2]Williams was dismissed from the lawsuit prior to trial after declaring bankruptcy.

The Bank sold the vehicle through its vendor, Forrest Faulknor & Sons, at a sealed bid auction at Faulknor's property in South San Francisco. Michael Faulknor, one of the owners, used a sealed bid auction, rather than a "live" auction, i.e., with an auctioneer and oral bidding, because it was his experience that sealed bid auctions brought higher prices. In a sealed bid auction, a bidder does not know the amount of the other bids.

Faulknor generally held the two-day sales weekly. Under this system, the sale did not take place at a single time and place; rather, bids on the vehicles were collected over the two-day period. If a bid that exceeded the Bank's minimum price, or a bid that was below the minimum price but which the Bank authorized Faulknor to accept, was not received during that time, the vehicle was placed in another sale and the process repeated. While the sales were attended by car dealers, they were also open to any member of the public who was over 18 years old, possessed a valid California driver's license, paid the $5 entrance fee, completed a membership application, and agreed to abide by Faulknor's rules and regulations. Faulknor advertised the sales in newspapers. Some but not all of the advertisements run during the period bids were received for Lallana's car stated the sales were "open to the public"; one characterized the sale as "public."

Lallana's car was featured in four 2-day sealed auctions over a period of several weeks from December 17, 1991, through January 7, 1992. The Bank did not bid at any sale. The car was eventually sold to a January 6 bidder for $5,000 with the Bank's approval because it was below the Bank's minimum price.

On November 24, 1992, the Bank sued Lallana for the amount of the deficiency, $11,249.84, plus interest, costs, and attorney fees. It alleged in its complaint that the vehicle was sold at a private sale. The Bank's claim for a deficiency has since been settled, and is not before us.

Lallana cross-complained for an injunction and restitution for herself and on behalf of the general public, alleging the Bank engaged in several unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200, including its failure to notify defaulting borrowers of the time and place of public sales of their repossessed vehicles as required by section 9504(3). A bifurcated trial was held solely on her cross-complaint. Lallana did not testify. There was no evidence that either she or Williams requested the Bank to tell them when and where the sale would be held.

The trial court entered judgment in favor of the Bank. On appeal, Lallana argued only that this sale was a public sale and the Bank failed to comply

with the notice requirements of section 9504(3), as incorporated in Civil Code section 2983.8, subdivision (b), part of the Act. She did not challenge the commercial reasonableness of the sale. The Court of Appeal reversed.

We granted the Bank's petition for review.

## II. DISCUSSION

### A. *Whether the Notice Must Comply With Section 9504(3)*

The first issue is whether the notice of the sale must comply not only with the Act, but also with section 9504(3).[3] Lallana agrees the Bank's notice of intent to sell satisfied Civil Code section 2983.2, part of the Act. Likewise, the Bank concedes the notice sent in this case did not disclose the time and place of the sale as required for a public sale under section 9504(3).

---

[3]At all relevant times, section 9504(3) provided in pertinent part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his or her address (before that secured party sends his or her notification to the debtor or before debtor's renunciation of his or her rights), a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail . . . at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held or in case no newspaper of general circulation is published in the county in which the sale is to be held, in a newspaper of general circulation published in the county in this state that (1) is contiguous to the county in which the sale is to be held and (2) has, by comparison with all similarly contiguous counties, the highest population based upon total county population as determined by the most recent federal decennial census published by the Bureau of the Census. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his or her residence or chief place of business, or in the county in which the secured party has his or her residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and that is held as herein provided is a public sale." (As amended by Stats. 1990, ch. 1125, § 4, pp. 4711-4712.)

Civil Code section 2983.2, subdivision (a), delineates certain information a creditor must generally include in its notice to the debtor. In particular, it provides that *"Except as otherwise provided in Section 2983.8*, [a debtor] shall be liable for any deficiency after disposition of the repossessed or surrendered motor vehicle only if the notice prescribed by this section is given within 60 days of repossession or surrender" and provides the debtor with certain information.[4] (Civ. Code, § 2983.2, subd. (a), italics added.)

Civil Code section 2983.8, subdivision (b), in turn provides, *"Notwithstanding Section 2983.2* or any other provision of law, no deficiency judgment shall lie in any event in any of the following instances: [¶] . . . [¶] (b) After any sale or other disposition of a motor vehicle unless the court has determined that the sale or other disposition was in conformity with the provisions of this chapter and the relevant provisions of Division 9 (commencing with Section 9101) of the Commercial Code, *including Section 9504.*" (Italics added.) Subdivision (b) of Civil Code section 2983.8 was added in 1984. (Stats. 1984, ch. 1376, § 1, p. 4859.)

Section 9203, subdivision (4), provides, "A transaction, although subject to this division, is also subject to [certain consumer statutes, including the Act], and in the case of conflict between the provisions of this division and that statute, the provisions of that statute control." The provisions of the Act, however, and in particular the language of Civil Code section 2983.8, subdivision (b), unambiguously require the secured creditor to comply with section 9504 as well as with the Act, before it may collect a deficiency judgment. Section 9504, subdivision (2)(b), generally provides, "the debtor is liable for any deficiency . . . , but only (i) if the debtor was given notice, if and as required by [section 9504,] subdivision (3), of the disposition of the collateral in accordance with [section 9504,] subdivision (3), and the disposition of the collateral by the secured party pursuant to this section was conducted in good faith and in a commercially reasonable manner . . . ." (See also § 9504, subd. (2)(c)-(e).)

The Bank asserts, however, that in adding Civil Code section 2983.8, subdivision (b), the Legislature intended to incorporate only the commercial

---

[4]In 1991, the creditor was generally required to give the borrower at least 15 days' written notice of its intent to dispose of the repossessed or surrendered vehicle, and inform the borrower of: (1) the right to redeem the vehicle; (2) the right to reinstate the contract or the reason why reinstatement was unavailable; (3) the right to extend the redemption and any reinstatement period; (4) the place where the vehicle would be returned upon redemption or reinstatement; (5) the name and address of the person or office to whom payments were to be made; (6) the seller's or holder's intent to dispose of the vehicle generally after 15 days; (7) the right to request a written accounting regarding the vehicle's disposition; and (8) a notice generally in at least 10-point bold type that the borrower may be subject to suit and liable if the amount obtained upon disposition of the vehicle was insufficient to pay the contract balance and any other amounts due. (Civ. Code, § 2983.2, subd. (a)(1)-(8), as amended by Stats. 1988, ch. 1092, § 3, pp. 3530-3531.)

reasonableness, not the notice requirements, of section 9504(3). Contrary to its assertion, nothing in the language "including Section 9504" in Civil Code section 2983.8, subdivision (b), supports the conclusion that the Legislature intended to incorporate some, but not every, requirement of section 9504. Nor, contrary to the Bank's assertion, does the legislative history of the 1984 amendment adding subdivision (b) to Civil Code section 2983.8 compel such a conclusion.

The Bank relies on *Creditors Bureau* v. *De La Torre* (1971) 16 Cal.App.3d 558, 562 [94 Cal.Rptr. 145] (*Creditors Bureau*), which concluded that a secured creditor need only comply with the notice requirements of the Act, and not those of the more "general" Commercial Code. *Creditors Bureau,* however, was decided prior to the 1984 amendment adding subdivision (b) to Civil Code section 2983.8. Hence, whatever the efficacy of its holding at the time it was decided, it is not applicable here.

The Bank also invokes the principle of statutory construction that when a general statute standing alone would include the same matter as a special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Here, however, resort to this rule of statutory construction is unnecessary because the relevant provisions expressly describe how the two statutes interrelate. Civil Code section 2983.8, subdivision (b), provides that a secured creditor must comply with both the Act and section 9504. If there is a conflict between the Act and section 9504, section 9203, subdivision (4), provides that the Act prevails. For example, while section 9504(3) requires only five days' notice of a public or private sale to the debtor, the Act generally requires fifteen days' notice. (§ 9504(3); Civ. Code, § 2983.2, subd. (a).) Therefore, the Bank in this case was generally required to give Lallana 15 days' notice. As noted earlier, Lallana concedes the Bank satisfied this requirement.

In sum, as the majority concludes, both the Act's and section 9504(3)'s notice provisions applied to this sale.

### B. *Whether the Sale Was Public or Private*

The next issue is whether the sale held in this case was a public or private sale within the meaning of section 9504(3). Lallana contends that although the Bank gave notice of a private sale, it held a public sale, and was *therefore not entitled* to seek a deficiency judgment against her. The Bank contends that the sale held was in fact private. The majority agrees with Lallana.

Here, where the central question is one of statutory construction, the majority never discusses section 9504(3)'s requirements for a private sale, to first ascertain whether the Bank held a sale consistent with its notice. Rather, the majority focuses on whether the Bank held a public sale. Even in this inquiry, it finds the statutory language—on which California secured creditors and debtors have relied for over 30 years—of no assistance. It notes that section 9504(3) has numerous requirements for a public sale, including where it must be held, that it must be held at a particular date and time, and how it may be postponed. Moreover, the last sentence of section 9504(3) provides, "Any sale of which notice is delivered or mailed and published as herein provided and that is held as herein provided is a public sale." Nevertheless, the majority concludes, that while this "sentence states that a sale conducted 'as herein provided' is a public sale, . . . there is no description of a public sale" in section 9504(3). (Maj. opn., *ante*, at p. 211.) Then, without any further examination of the language of section 9504(3), the majority baldly states that section 9504(3) does not define the terms "public" and "private" sale. (Maj. opn., *ante*, at p. 212.) Hence, it must look to the law of other states construing a different statute not contained in the California Uniform Commercial Code, that is, national Uniform Commercial Code section 9-504(3). (Maj. opn., *ante*, at pp. 212-213.)

Actually, as a comparison of the language of section 9504(3) and the national Uniform Commercial Code section 9-504(3) reveals, California has chosen to define the terms "public" and "private" sale to provide predictability to secured creditors regarding how to conduct their sales. Indeed, the legislative history of section 9504(3) reflects this purpose. Accordingly, the majority's reliance on out-of-state definitions is inapt. Rather, section 9504(3) itself provides the answer of how to define private and public sales in California.

### 1. *Background*

At all relevant times, section 9504(3) provided in pertinent part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. . . . [T]he secured party must give to the debtor . . . a notice in writing of the time and place of any public sale *or of the time on or after which any private sale or other intended disposition is to be made.* Such notice must be delivered personally or be deposited in the United States mail . . . *at least five days before* the date fixed for any public sale or *before the day on or after which any private sale or other disposition is to be made.* Notice of the time and place of a public sale shall also be given at least five days before the date of sale by

publication once in a newspaper [meeting certain conditions] . . . . Any public sale shall be held in [a particular location] . . . . Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. *Any sale of which notice is delivered or mailed and published as herein provided and that is held as herein provided is a public sale.*" (As amended by Stats. 1990, ch. 1125, § 4, pp. 4711-4712, italics added.)

A secured creditor that is required to comply with the notice provisions of section 9504(3), and fails to do so, loses its right to recover a deficiency judgment. (§ 9504, subd. (2)(b) [debtor is only liable for a deficiency "if the debtor was given notice, if and as required by [section 9504,] subdivision (3), of the disposition of the collateral in accordance with [section 9504,] subdivision (3)"]; *id.*, subd. (2)(c)-(e); *Canadian Commercial Bank* v. *Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1149 [280 Cal.Rptr. 521] ["Failure to comply with . . . the notice requirement . . . will act as an absolute bar to a deficiency judgment." (Fn. omitted.)]; *Western Decor & Furnishings Industries, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 293, 300, 308 [154 Cal.Rptr. 287] [failure to give notice of a private sale after partial sale of collateral at a noticed public sale precluded recovery of deficiency].)

In general, for both private and public sales, the purpose of the notice requirement is to alert the debtor that his or her interests may be extinguished in the near future, so that the debtor can take steps to protect his or her interests, either through discharging the debt and redeeming the collateral or possibly locating another purchaser for the collateral. (*Ford & Vlahos* v. *ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1232-1233 [36 Cal.Rptr.2d 464, 885 P.2d 877] (*Ford & Vlahos*); see *Buran Equipment Co.* v. *H & C Investment Co.* (1983) 142 Cal.App.3d 338, 341 [190 Cal.Rptr. 878]; see 2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 27-9, p. 590 ["The notice requirement is easy to understand and to apply; it is inspired by the usually forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friends to bid for it."].) In addition, for public sales, the requirement that the debtor be informed of the time and place of the sale permits the debtor to attend and ensure the sale is performed in a commercially reasonable manner. (See *Ford & Vlahos, supra*, 8 Cal.4th at p. 1232.)

Section 9504(3) does not contain an exhaustive description of either a public or private sale. The statute does, however, delineate several distinctions between the two types of sales. Most significantly, a secured creditor

cannot bid at most private sales, including the sale of the collateral at issue here, but may bid at a public sale. In addition, the notice to a debtor of a public sale must be given five days before the sale, and state the time and place of the sale; if the sale is postponed, that postponement must be announced at the place and time last scheduled for the sale. In contrast, the notice to a debtor of a private sale need only be given five days before the date on or after which the collateral will be sold, and state that date in the notice. A public sale must be advertised once in a newspaper that meets certain conditions at least five days before the date of the sale. In addition, the sale must be held in a certain location. There are no such requirements for a private sale. Finally, section 9504(3) provides, "Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale."

As can be seen, while the requirements for a private sale are few, the requirements for a public sale are more elaborate. Indeed, California is unique in the manner in which its Uniform Commercial Code requirements for public and private sales differ from those of the national Uniform Commercial Code. The legislative history of section 9504(3) states, "The Official Text requires that 'reasonable notification of the time and place of any public sale must be given' and 'reasonable notification' of the time on or after which a private sale will be made, but does not specify either the manner in which notice must be given or the time within which it must be given. We think both the time and manner of giving notice should be specified, otherwise every sale is open to attack. *A public sale should be defined.* We believe that the requirement that every aspect of the sale be done in 'a reasonably commercial' manner is too vague a requirement to be of any value and would only be an invitation to litigation." (Sen. Fact Finding Com. on Judiciary, Sixth Progress Rep. to Leg., pt. 1 (1959-1961) Cal. U. Com. Code, p. 426, italics added.) Referring to the above recommendations, the report on proposed amendments to the California Uniform Commercial Code stated, "The California Bankers Committee believe that a secured party, when his debtor is in default, is entitled to more specific instructions as to how he may conduct a valid foreclosure sale, otherwise every sale would be subject to subsequent challenge. We think so too . . . ." (*Id.* at p. 587.)

It is interesting that while the Legislature focused on further defining both public and private sales, it created greater requirements for a public sale. Presumably this is because a public sale is generally the only opportunity for the secured creditor to bid on the collateral. Absent the notice and publicity requirements for a public sale, an unscrupulous creditor could conceivably bid a low amount for the collateral, obtain a large deficiency from the

debtor, and then resell the collateral at a price substantially above the creditor's purchase price. (See *Security Pacific National Bank* v. *Geernaert* (1988) 199 Cal.App.3d 1425, 1431 [245 Cal.Rptr. 712].) Indeed, private sales appear to be preferred under the national Uniform Commercial Code. (Cal. U. Com. Code com., 23C West's Ann. Com. Code (1990 ed.) foll. § 9504, p. 597; see also U. Com. Code com., 3B West's Ann. Com. Code (1992 ed.) foll. § 9-504, p. 129 ["Although public sale is recognized, it is hoped that private sale will be encouraged where, as is frequently the case, private sale through commercial channels will result in higher realization on collateral for the benefit of all parties."].)

A secured party is required to act in good faith and in a commercially reasonable manner for *both* private and public sales. (§ 9504(3).) "Whether a sale is conducted in a commercially reasonable manner is a question of fact and the answer depends on all of the circumstances existing at the time of the sale." (*Clark Equipment Co.* v. *Mastelotto, Inc.* (1978) 87 Cal.App.3d 88, 96 [150 Cal.Rptr. 797].) Satisfying this requirement may under some circumstances require a secured creditor to go beyond the express requirements of section 9504(3).

Thus, in *Ford & Vlahos*, the secured creditor was the sole bidder at a public sale for the collateral, a Lockheed Hercules C-130A aircraft. (*Ford & Vlahos, supra*, 8 Cal.4th at pp. 1223-1224.) It subsequently resold the aircraft for at least $487,000 more than it paid at the sale. (*Id.* at p. 1224.) We concluded that although the secured creditor's publication complied with the notice requirements of section 9504(3) for a public sale, substantial evidence supported the conclusion that "the Phoenix newspapers, with their limited circulation, did not provide a forum likely to bring bidders and a fair price for the foreclosed aircraft, and the sale hence was commercially unreasonable." (8 Cal.4th at pp. 1227, 1235; *American Business Credit Corp.* v. *Kirby* (1981) 122 Cal.App.3d 217, 220-221 [175 Cal.Rptr. 720] [public sale of "reefer vans" not commercially reasonable in part because while publication in the Los Angeles Daily Journal satisfied requirement of publication in a " 'newspaper of general circulation,' " "there is no showing that [the Journal] is circulated among, or read by, dealers in 'reefer vans' "]; *id.* at p. 221 [secured creditor must prove it "exposed the potential sale to at least a substantial number of potential buyers"]; see *Westgate State Bank* v. *Clark* (1982) 231 Kan. 81 [642 P.2d 961, 963, 972] [private sale of two recreational vehicles not commercially reasonable in part "because only five or six bids were solicited by telephone and there was no advertising directed toward the *general public*"]; 2 White & Summers, Uniform Commercial Code, *supra*, § 27-14, p. 610 ["many cases have found private sales commercially unreasonable on the ground that the creditor failed to exercise due

diligence," including by not contacting enough purchasers or not advertising the availability of the goods].)

### 2. Analysis

Section 9504(3) provides, "Any sale of which notice is delivered or mailed and published as herein provided and that is held as herein provided is a public sale." Thus, a sale is not public merely because it is open to the public. Rather, the notice and characteristics of the sale must conform to section 9504(3)'s requirements. As already observed, the requirements for a public sale are more elaborate under section 9504(3) than those for a private sale. A public sale requires five days' notice to the debtor of the time and place of the sale, advertising the sale once in a newspaper that meets certain conditions at least five days before the date of the sale, holding the sale in a particular location, and an announcement at a particular time and place if the public sale is postponed. For a private sale, the secured creditor must simply give five days' notice to the debtor of the date on or after which the collateral will be sold, and then sell the collateral on or after that date in good faith and in a commercially reasonable manner. If it does so, it has complied with all of section 9504(3)'s private sale requirements.

In determining whether a secured creditor has complied with section 9504(3)'s requirements, and is entitled to a deficiency, the court should first determine the type of sale that was noticed. Here, the Bank gave Lallana at least 15 days' notice of a private sale, or that her repossessed vehicle would be sold after a particular date. The court should then consider whether the secured creditor complied with section 9504(3)'s requirements for the type of sale noticed. Here, the Bank sold the vehicle in good faith and a commercially reasonable manner well after the date stated in the notice. I would conclude that these actions satisfied the private sale requirements of section 9504(3).

In addition, the Bank, through its vendor, advertised the sale of the vehicle, and invited the public to attend and submit sealed bids. In my view, nothing in section 9504(3) precludes such actions. In addition to providing adequate notice, the Bank is obligated to conduct the sale in good faith and in a commercially reasonable manner. As stated earlier, this may under some circumstances require a secured creditor to go beyond the express require-ments of section 9504(3). (*Ford & Vlahos, supra,* 8 Cal.4th at pp. 1227, 1235; *American Business Credit Corp.* v. *Kirby, supra,* 122 Cal.App.3d at pp. 220-221; see *Westgate State Bank* v. *Clark, supra,* 642 P.2d at p. 972; 2 White & Summers, Uniform Commercial Code, *supra,* § 27-14, pp. 610-611.) Indeed, inviting the general public to submit sealed bids for Lallana's

car over four 2-day periods seems more likely to obtain a higher price for the vehicle, and consequently a lower deficiency for Lallana, than would be obtained by relying on either word of mouth or chance visitors to the Faulknor lot. (See *J. T. Jenkins Co.* v. *Kennedy* (1975) 45 Cal.App.3d 474, 480, fn. 15 [119 Cal.Rptr. 578] ["It is well settled that it is the duty of the repossessing seller to obtain the best price possible under the circumstances prevailing at the time of resale."]; *Elster's Sales* v. *El Bodrero Hotel, Inc.* (1967) 250 Cal.App.2d 258, 260 [58 Cal.Rptr. 492] [policy of section 9504 is to require "a repossessing seller to resell at the best obtainable price on commercially reasonable terms"].) In any event, even if these actions could be perceived as somehow prejudicing Lallana, they go not to the issue of whether the Bank complied with the section 9504(3) notice requirements, which it did, but to whether the sale was commercially reasonable, an aspect of this sale Lallana does not challenge.

Moreover, the sale here was not held as a "public" sale. It was not held at a specific time or place, as required for a public sale, but for two days a week, from 8 a.m. to at least 5 p.m., over a four-week period. The majority's conclusion that this qualifies as a "public" sale is not a reasonable interpretation of the language of section 9504(3), which refers to a "date" for a public sale, not "dates." (See *J. T. Jenkins Co.* v. *Kennedy, supra,* 45 Cal.App.3d at p. 481 [Letter which "merely stated that the collateral would be sold at the end of seven days from the date of the letter . . . failed to specify the exact time and date when the public sale would be conducted."].) Moreover, under such a broad interpretation of the terms "date" and "time and place," how will such a public sale be "postponed"? (§ 9504(3).) What portion of each two-day period will be the "time and place last scheduled for the sale"? (*Ibid.*)

By contrast, section 9504(3) requires notice to the debtor of "the time on or after which any private sale or other intended disposition is to be made." Thus, section 9504(3) anticipates that a private sale, as opposed to a public sale, will take place over a period of time after a particular date. (*Buran Equipment Co.* v. *H & C Investment Co., supra,* 142 Cal.App.3d at p. 342 [The private sale provision of section 9504(3) "contemplates continuing efforts to obtain the best price for collateral through private sale. . . . Where sales are best conducted over a period of time, the uncertainty of when they might occur (as contrasted with the certainty of the date of a public sale) could make it difficult, if not commercially impracticable, to give notice of each anticipated private sale."]; *Backes* v. *Village Corner, Inc.* (1987) 197 Cal.App.3d 209, 215 [242 Cal.Rptr. 716] ["When a secured party intends to proceed by private sale, . . . the code permits a flexible form of notice which allows the secured party to hold the property on the market for

a period of time."].) Thus, here, for example, if the Bank had bid at the sale, that bid would be improper because it was not made at a sale either noticed or held as a public sale, and the Bank is not permitted under section 9504(3) to bid at a private sale for the particular collateral at issue.

Concepts of fairness and efficiency are immanent in the Commercial Code. (See *Ford & Vlahos, supra,* 8 Cal.4th at p. 1234.) "Clearly, fairness and efficiency would both suffer from a rule that" inviting the public to submit sealed bids at a private sale defeated a secured creditor's right to a deficiency. (*Id.* at p. 1235.) Such a rule would in most cases appear to serve the interests of no one. The secured creditor precluded from such advertising or bidders would most likely not recover its unpaid debt. As the evidence at trial indicated, during the period in question the Bank was only successful in collecting approximately 10 percent of its deficiency claims for repossessed vehicles. Hence, it is to its advantage to get the highest resale price possible for the vehicle. Similarly, the debtor has a strong interest in the creditor getting the debt repaid from the resale of the collateral, not through collection of a deficiency.

Indeed, by holding that advertising and inviting the public to the sale in this case automatically rendered the sale "public" regardless of the form of notice or whether the criteria for a private sale were satisfied, the majority does little but encourage clandestine private sales. While a creditor might benefit from such a result if the debtor had the resources to pay a deficiency judgment, the debtor never will. Consider the aircraft sold in *Ford & Vlahos, supra,* 8 Cal.4th 1220. In that case we held that while the creditor's publication complied with the notice requirements of section 9504(3) for a public sale, the sale was not commercially reasonable because it was not advertised in a forum likely to bring bidders and a fair price for the aircraft. (8 Cal.4th at pp. 1227, 1235.) Here, the majority concludes that the Bank loses its right to seek a deficiency because it advertised and invited the public. Assume also a different secured creditor then sells a similar aircraft to the one in *Ford & Vlahos* in a *private* sale, without advertising and telling only a few potential buyers. It then seeks a deficiency. This court will be constrained to hold that such a private sale was commercially *reasonable*. After all, the commercial reasonableness of such a private sale will essentially depend on how well the secured creditor marketed the collateral without telling too many people about it. That is because the creditor is precluded from advertising or inviting the public, or it runs the risk its private sale will suddenly be deemed a "public" sale. Little purpose is served by such a rule.[5]

Lallana asserts that "[u]nless the debtor can attend, there is no one to police the sale." However, section 9504(3) does not require the debtor to

---

[5] I urge the Legislature to adopt legislation clarifying the law in this area for the stability of all private sales that have already occurred and are still subject to challenge.

receive notice of the time and place of a private sale. Rather, the secured party has the right to dispose of the collateral by private sale in any good faith and commercially reasonable manner after giving the debtor adequate notice of the date on or after which the sale will occur. Indeed, the record indicates Lallana never even asked for this information. Her arguments that a debtor should be entitled to notice even for a private sale are best directed to the Legislature.

## CONCLUSION

I would reverse the judgment of the Court of Appeal.

Davis, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.