[No. D055228. Fourth Dist., Div. One. Apr. 9, 2010.]

SUEZANE SALENGA, Cross-complainant and Appellant, v.
MITSUBISHI MOTORS CREDIT OF AMERICA, INC., et al.,
Cross-defendants and Respondents.

## COUNSEL

Kemnitzer, Anderson, Barron, Ogilvie & Brewer; Anderson, Ogilvie & Brewer, Andrew J. Ogilvie, Carol McLean Brewer; and Michael E. Lindsey for Cross-complainant and Appellant.

Severson & Werson, Jan T. Chilton, John B. Sullivan, Regina J. McClendon and Erik Kemp for Cross-defendants and Respondents.

## OPINION

**HUFFMAN, J.**—This is an appeal from an order dismissing a first amended cross-complaint, in which defendant, cross-complainant and appellant Suezane Salenga (Appellant) sought to plead a class cause of action under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.). Appellant sought to restrict the business practice in which creditors obtain deficiency judgments against vehicle buyers who have defaulted on their auto loans, under certain circumstances, pursuant to the body of law known as the Rees-Levering Motor Vehicle Sales and Finance Act (the Act; Civ. Code, § 2981 et seq.; all statutory references are to the Civil Code unless otherwise indicated).

The trial court sustained, without leave to amend, demurrers brought by cross-defendants Mitsubishi Motors Credit of America, Inc. (MMCA), and Cavalry Portfolio Services, LLC (Cavalry) (sometimes together cross-defendants).[1] The demurrers were based on the four-year limitations period of the UCL. (Bus. & Prof. Code, § 17208; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178–179 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

---

[1] Another named cross-defendant is MMCA and Cavalry's related business, Cavalry SPV I, LLC, an assignee; no separate issues are raised about any of these cross-defendants, except with regard to a potential amendment. Appellant's cosigner and an original defendant, Priscilla Castro, is no longer a party.

In the underlying complaint, Cavalry (as an assignee of MMCA) sued Appellant, seeking a deficiency judgment, after Appellant had defaulted on her MMCA auto loan in 2003 and the vehicle was repossessed. She was given a notice of intent to dispose of motor vehicle (NOI or Notice) dated October 14, 2003, and the vehicle was sold at auction. (§ 2983.2, subd. (a).) About four years later, Cavalry filed its complaint seeking payment of a deficiency balance of $10,288.56, plus interest from May 2004.

Upon being sued by Cavalry in March 2008, Appellant answered and brought this cross-complaint, as amended (FACC), seeking declaratory, injunctive, and restitutionary relief for class members against whom a deficiency judgment was sought, but allegedly unlawfully, due to their previous receipt of a Notice that was defective and therefore would not, as a matter of law, support a deficiency judgment. (See *Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889, 894 [61 Cal.Rptr.3d 382] (*Juarez*).) Cross-defendants brought their demurrer, asserting the action was time-barred and additionally barred by litigation privilege. (Bus. & Prof. Code, § 17208; Civ. Code, § 47, subd. (b).)

Appellant now contends the trial court erred and abused its discretion when it sustained the demurrers without leave to amend on limitations grounds, and her class action FACC should not be deemed to be time-barred under the UCL. She asserts that her cause of action did not accrue until fewer than four years before the filing date of the underlying complaint, because all of its elements did not occur until 2007 or 2008, when cross-defendants began the underlying proceedings to seek a deficiency judgment (demand letter and complaint). Appellant asserts that she did not sustain any injury in fact, a required element to establish standing to bring a UCL cause of action, until she was notified that a deficiency judgment would be sought and she made a payment. (§§ 2983.2, subd. (a), 2983.8.)

Accordingly, Appellant seeks to pursue these class claims of an unlawful, unfair or deceptive business practice, consisting of seeking a deficiency judgment when the underlying Notice was defective (for lack of certain information about the procedures for reinstating the loan), under the criteria laid out in the 2007 published opinion issued by this court, *Juarez, supra*, 152 Cal.App.4th 889. Appellant never made an effort to reinstate her loan after her 2002 default, and she does not argue she was directly injured by the defects in the 2003 Notice, except for purposes of opposing such deficiency judgment applications on behalf of the class, to seek injunctive, declaratory, or restitutionary relief. (Bus. & Prof. Code, § 17203.)

Although the FACC is currently problematic in terms of alleging any justification for a postponed accrual of this class cause of action, and in terms

of the potential applicability of any litigation privilege, we believe that a realistic possibility of amendment exists for a successful allegation of this claim under the Act, within the limitation bars of the UCL. It would have been the better exercise of discretion for the trial court to allow leave to amend, as will be explained, and we reverse the judgment of dismissal with directions to allow an appropriate application to file such an amended pleading.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of analyzing the demurrer ruling, we take the facts properly pleaded to assess whether they may state a cause of action as a matter of law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In the underlying complaint, Cavalry, acting as an assignee of MMCA, filed its complaint for breach of contract and a deficiency balance, alleging that it was entitled to a deficiency judgment against Appellant in the amount of $10,288.56, after it sold the car she had purchased in November 2001. She had defaulted in her loan payments in 2003, the vehicle was repossessed, and the NOI sent in October 2003. She did not attempt to reinstate the contract and the vehicle was sold.

In March 2008, Cavalry sued Appellant for damages and interest dating from May 14, 2004, forward. (See § 2983.2, subd. (a)(9) [interest recoverable from date of disposition of vehicle to date of entry of judgment]; see Code Civ. Proc., § 337, subd. 1 [four-year limitations period for contract actions].)

After being notified that a deficiency judgment was being sought, Appellant made at least one payment to cross-defendants. In May 2008, Cavalry obtained a default judgment, but in July 2008, it was set aside by stipulation. In August 2008, Appellant filed an answer asserting that the complaint was barred by the statute of limitations, because it was based on the October 2003 notice. Appellant also alleged the notice was defective in unspecified ways, for noncompliance with the requirements of section 2983.2, subdivision (a)(2).

Appellant filed and then amended the cross-complaint against MMCA and Cavalry, alleging all cross-defendants were agents of one another and related by assignment. The FACC alleges that the notice received by Appellant about her opportunity to reinstate the contract was defective by failing to adequately set forth all the conditions precedent for reinstatement, pursuant to section 2983.2, subdivision (a)(2). Appellant alleged injury in fact, from being sued for an invalid deficiency, from making a payment, and from being reported by cross-defendants on the invalid deficiency claim to credit bureaus. Appellant proposed a definition of the class to the same effect.

All cross-defendants demurred, arguing the pleading was defective on its face, both on limitations grounds and because no vicarious liability theory was viable against Cavalry under the UCL. Even though the filing of the complaint operated to toll the running of the applicable limitations period as to the cross-complaint, cross-defendants asserted that the action should have been brought in 2003 or within a year of that Notice. They also argued that the filing of their underlying complaint seeking a deficiency judgment was protected by litigation privilege. (§ 47, subd. (b).) Reply papers were filed and the matter was orally argued.

In its order on demurrer, the court ruled that Appellant's FACC was barred by the UCL's four-year statute of limitations. (Bus. & Prof. Code, § 17208.) The court found that Appellant's UCL claims were based on a defective NOI, sent in October 2003, but the cross-complaint was erroneously not filed until August 5, 2008, over four years later. "The Court rejects Salenga's argument that the assertion of a deficiency against her in a lawsuit filed on March 6, 2008, started the running of the statute of limitations." The court's order made no findings on whether the underlying complaint was protected by litigation privilege or on whether that doctrine undermined the efficacy of the FACC. (§ 47, subd. (b).)

Accordingly, the demurrers were sustained without leave to amend and the court dismissed the action as to all cross-defendants. Appellant timely filed her notice of appeal on May 29, 2009.[2]

DISCUSSION

I

*STANDARD OF REVIEW AND ISSUES PRESENTED*

We apply well-established rules of review. "A demurrer tests the legal sufficiency of the complaint. [Citation.] Therefore, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' [Citation.] The trial court exercises its discretion in declining to grant leave to amend. [Citation.] If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of proving the

---

[2] The record has been augmented to include the dismissal of the underlying complaint on June 26, 2009. This order is appealable as a final disposition of the action.

possibility of cure by amendment." (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 78–79 [14 Cal.Rptr.3d 893] (*Grinzi*).)

"Generally, a party is not permitted 'to change [her] position and adopt a new and different theory on appeal' because doing so would be unfair both to the court and to the opposing litigant. [Citation.] However, the appeal of a judgment of dismissal after sustaining of a demurrer without leave to amend requires the consideration of whether the allegations state a cause of action under any legal theory. [Citation.] Under these circumstances, new theories may be advanced for the first time on appeal." (*Grinzi, supra*, 120 Cal.App.4th 72, 85.) Here, Appellant has suggested several potential amendments to her pleading, including more allegations about the interrelationship of the cross-defendants and the date that her injury in fact was sustained, in 2007 or 2008, when she was notified of the deficiency proceedings and when she made a payment.

Appellant contends on appeal that she successfully alleged cross-defendants violated the UCL, because they "unlawfully and deceptively" asserted that she was liable to them for an invalid deficiency claim, even though the allegedly defective NOI could not properly support a deficiency judgment. She claims her UCL claim did not accrue, based upon the underlying violations of the Act, until the cross-defendants sued her on an invalid Notice and she paid them money as a result of the invalid claim.

In reply, cross-defendants assert: "The gist of the cross-complaint is the failure to send a proper NOI. The UCL cause of action accrued upon the first loss of money or property as a result and does not re-accrue upon later harm arising from the same wrong."

 In assessing these arguments about the extent and purpose of both the Act and the UCL, we seek to " ' "ascertain the intent of the Legislature in order to effectuate the purpose of the law." ' [Citation.] First, we look to the words of the statute giving ' "effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage." ' [Citation.] We must give the statute ' " 'a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]' " ' [Citation.] 'If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.' " (*Grinzi, supra*, 120 Cal.App.4th 72, 86.)

## II

### *ACCRUAL AND UCL LIMITATIONS RULES*

■ It is well accepted that a limitations period commences when the cause of action "accrues." (Code Civ. Proc., § 312; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 [27 Cal.Rptr.3d 661, 110 P.3d 914].) " 'Generally speaking, a cause of action accrues at "the time when the cause of action is complete with all of its elements." ' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1317–1318 [64 Cal.Rptr.3d 9].) "The cause of action ordinarily accrues when, under the substantive law, the wrongful act is done and the obligation or liability arises, i.e., when an action may be brought." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 493, p. 633.)

■ Here, the applicable substantive law includes both the Act and the UCL. It is well established that "[a]n action for unfair competition under Business and Professions Code section 17200 'shall be commenced within four years after the cause of action accrued.' (Bus. & Prof. Code, § 17208.) The 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions. Thus, 'the statute begins to run . . . irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine.' " (*Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 891 [117 Cal.Rptr.2d 331].) Here, Appellant expressly disavows any reliance on a continuing violation theory of delayed accrual. Nor does Appellant appear to pursue the concept of equitable tolling or a delayed discovery rule.

Rather, Appellant contends that even without the need for equitable tolling or delayed discovery concepts, the trial court erred by determining her cause of action was time-barred. She contends she was not actually adversely affected by the defective NOI, until cross-defendants made efforts to pursue a deficiency judgment on it, and until she made a payment at that time.

■ The authors of 3 Witkin, California Procedure, *supra*, Actions, section 496, page 635, summarize the various categories of exceptions that have been made over time to the general rule of "accrual" of a cause of action as of the time of the wrongful act. These include, as potentially relevant here, "(2) Accrual when damage results. [Citation.] [¶] (3) Accrual postponed by condition precedent." The authors further explain that these "rules of delayed accrual are to be distinguished from rules that, despite accrual of the cause of action, toll or suspend the running of the statute." (*Ibid.*)

To examine whether a postponed accrual of this statutory claim under the Act and the UCL could be pled five years after the NOI was sent, we turn to an analogous example given by the authors of 3 Witkin, California Procedure, *supra*, Actions, section 504, page 647, on when a plaintiff must comply with a claims presentation requirement before bringing a court action. "Where the right to sue is subject to a condition precedent, such as filing a claim with an estate or governmental body, a statute may provide that the limitations period begins to run only from the time of rejection of the claim. . . . And the plaintiff cannot delay accrual of the cause of action by failure or refusal to perform a condition such as demand, for demand must be made within a reasonable time." By comparison, it could be said that this Appellant did not have a right to sue under the UCL, to enforce the deficiency judgment protections in the Act, until an adverse action was brought against her, to which she could respond. Her answer to the original complaint raised a form of this defense, but the cross-complaint asserted different theories and is a more complete response.

■ In general, creditors are required to make a demand for payment within a reasonable time. "In some situations the obligation of the defendant does not arise unless the plaintiff makes a demand. . . . [Here,] the condition is not an event but rather an act of the plaintiff creditor; and the creditor should not be permitted to control and indefinitely suspend the running of the statute by neglecting or deliberately refusing to perform the condition precedent to the creditor's own action. Hence, the courts have taken the position that the creditor should make his or her demand within a 'reasonable time,' and the statute will commence to run after that time has elapsed." (3 Witkin, Cal. Procedure, *supra*, Actions, § 532, pp. 682–683.)

According to cross-defendants, Appellant sustained no prejudice from this delay in bringing the underlying action for the deficiency judgment. They rely on authority such as *Davies v. Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161] (*Davies*), a case which found no justifiable postponed accrual of a plaintiff's action, based upon an analysis of when the plaintiff's predecessor had actually sustained injury. In that matter, the plaintiff's decedent was a writer who confidentially submitted a theatrical story to the defendant, a producer who then utilized it without permission (disclosing it three years later and using it in a successful play a total of seven years later). In the interim, the plaintiff's decedent had learned of the wrongful disclosures, and, after he died and the year after the play was produced, the plaintiff personal representative sued the producer for damages. The court decided that the plaintiff's action was properly held to be barred by a two-year statute of limitations applicable to an intentional wrong (miscellaneous tort; Code Civ. Proc., § 339, subd. 1).

■ The reasons for the holding in *Davies* were that the cause of action accrued not later than the date when the decedent had learned of the wrongful

disclosures that had destroyed the marketability of his material. The Supreme Court rejected any contention that the running of the statute should not begin until the injured party has an effective remedy, because the rule should be that "the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period." (*Davies, supra*, 14 Cal.3d at p. 514.) And "neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." (*Ibid.*) "He cannot be permitted to rest on his rights, shifting to defendant the risk and expense attendant upon commercial exploitation of his idea, and then assert his claim only when that exploitation had yielded a net profit." (*Id.* at p. 515.)

We next apply these principles governing the accrual of causes of action to the pleadings before the court, with regard to the protective policies of the Act, including whether there is any reasonable possibility that Appellant can truthfully amend to allege facts establishing the timeliness of this cross-action.

## III

### THE ACT'S PROTECTIONS

■ The relevant portions of the statutory scheme, and the policies promoted by the Act, must be considered in connection with determining the appropriate accrual time of this proposed class cause of action for alleged violation of rights guaranteed by the Act. The purpose of the Act is to provide more comprehensive protections in financing for the unsophisticated motor vehicle consumer. (*Juarez, supra*, 152 Cal.App.4th at p. 901; 13A Cal.Jur.3d (2004) Consumer and Borrower Protection Laws, § 390, p. 512.) This court in *Thompson v. 10,000 RV Sales, Inc.* (2005) 130 Cal.App.4th 950 [31 Cal.Rptr.3d 18], observed that the courts must look to the substance of the transaction, rather than allowing "mere form to dictate the result." (*Id.* at p. 966.) Whether consumer protection laws, such as the Act, apply to a particular transaction, is determined in light of the policies of the Act. (*Thompson*, at p. 966.)

■ Deficiency judgments are subject to certain restrictions under the Act. In *Bank of America v. Lallana* (1998) 19 Cal.4th 203 [77 Cal.Rptr.2d 910, 960 P.2d 1133] (*Bank of America*), the Supreme Court held that a secured creditor who sells a defaulting debtor's repossessed car may obtain a deficiency judgment, but only by complying with all the provisions of the Act, as well as the relevant provisions of the California Uniform Commercial Code (div. 9). (19 Cal.4th at p. 208; § 2983.8.) The court took this approach: " ' "[T]he rule and requirement are simple. If the secured creditor wishes a

deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." ' " (*Bank of America, supra*, 19 Cal.4th 203, 215.)

In *Juarez*, this court reversed a summary adjudication and judgment that the trial court had rendered in favor of a creditor/lender, and we discussed the requirements for proving individual claims under the Act and UCL claims brought on behalf of a class. The Juarezes alleged that the lender had engaged in unlawful, unfair and fraudulent business practices, by violating the requirements of the Act, by the manner in which it gave only a generalized notice of how to reinstate a defaulted loan, and otherwise made it difficult for the buyer to determine the amounts owed. (*Juarez, supra*, 152 Cal.App.4th at pp. 904–907.) We explained that the Act requires creditors to provide a defaulting buyer with an NOI (to dispose of the repossessed vehicle), that adequately sets out "sufficient information to allow buyers to fulfill all of the conditions the buyer must meet before a creditor will reinstate the contract." (152 Cal.App.4th at p. 912.) Thus, an NOI must "inform the buyer of any amounts the buyer will have to pay to the creditor and/or to a third party to reinstate a contract." (*Ibid.*) The NOI must also inform the buyer when, if, and by how much those amounts will increase regarding additional payments coming due, or as a result of late fees or other fees and charges. (*Ibid.*)

In *Juarez*, after determining that the lender's NOI failed to satisfy the statutory requirements of the Act, we further ruled that triable issues remained on whether that "unlawful" business practice might also amount to violations of the "unfair" and "deceptive" prongs of the UCL standards. "On remand, the trial court should consider the Juarezes' claims under all three prongs of the UCL." (*Juarez, supra*, 152 Cal.App.4th at p. 912, fn. 13.)

The restrictions on deficiency judgments that are the subject of the claims before us are stated in section 2983.2, subdivision (a), which normally (except where the motor vehicle has been seized) requires that a lender give, at least 15 days in advance, a written NOI to dispose of the repossessed motor vehicle "to all persons liable on the contract," in a prescribed manner. Next, as relevant here, "[e]xcept as otherwise provided in Section 2983.8, those [contractually liable] persons shall be *liable for any deficiency* after disposition of the repossessed or surrendered motor vehicle *only if the notice prescribed by this section* is given within 60 days of repossession or surrender and *does all of the following*: [¶] [paragraphs (1)–(9), including] [¶] (2) *States* either that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice *and all the conditions precedent thereto* or that there is no right of reinstatement and provides a statement of reasons therefor." (§ 2983.2, subd. (a), italics added;

see § 2983.3, subd. (b) [outlines certain exceptions to a buyer's right to reinstate, which are not relevant here].)

Section 2983.8, as referred to above, restricts the availability of a deficiency judgment under specified circumstances, notwithstanding section 2983.2 or other provisions of law. As pertinent here, section 2983.8, subdivision (b) provides that a deficiency judgment may not be obtained "[a]fter any sale or other disposition of a motor vehicle unless the court has determined that the sale or other disposition *was in conformity with the provisions of this chapter* and the relevant provisions of Division 9 (commencing with Section 9101) of the Commercial Code . . . . The determination may be made upon an affidavit unless the court requires a hearing in the particular case." (Italics added.)

In *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089–1090 [56 Cal.Rptr.3d 861, 155 P.3d 268] (*Fireside Bank*), the issues concerned whether the potential class representative, in an action asserting violations of the Act, could adequately demonstrate the class criteria of typicality and superiority. In discussing how the class representative, Gonzalez, had adequately demonstrated she had standing under the UCL, the court relied on several factors that supported her claim that class members were deprived of a fair opportunity to redeem the financed vehicle, and were further subjected to an unlawful demand for payment. As the class representative, she was allowed to claim that Fireside Bank was unlawfully asserting a debt against her, and to pursue an injunction against further collection efforts, and to seek restitution of any postrepossession payments made against the alleged deficiency. (40 Cal.4th at p. 1090.)

When a secured creditor pursues a deficiency judgment, it must follow the statutorily prescribed notice procedures of the Act. (See *Bank of America, supra*, 19 Cal.4th 203, 215.) With those standards in mind, we turn to the question of whether the FACC now pleads or could possibly plead a timely and adequate theory of violation of the Act, under these circumstances, through Appellant's incorporation of the UCL statutory scheme.

IV

*APPLICATION OF RULES*

 There is some confusion in the briefs about the required elements of a cause of action that may be asserted by a borrower for breach of a substantive right provided to the borrower by the Act (e.g., no deficiency judgment absent a compliant NOI; §§ 2983.2, subd. (a), 2983.8). The parties have discussed, for limitations purposes, the date of incurring actual injury, as

that same concept has been developed in the law for determining whether a putative class representative has standing, under the restrictions of the UCL, to assert a particular claim. Normally, "standing" questions will arise in the related context of justiciability determinations (made upon intertwined criteria of ripeness and standing). " 'One who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' " (3 Witkin, Cal. Procedure, *supra*, Actions, § 21, p. 84.)

*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 318 [93 Cal.Rptr.3d 559, 207 P.3d 20], includes extensive discussion of the modern concept of standing in UCL class actions. Under Proposition 64, the UCL's substantive purpose of protecting consumers from unfair businesses practices was not altered, and the focus of the initiative "was to address a specific abuse of the UCL's generous standing provision by eliminating that provision in favor of a more stringent standing requirement." (*In re Tobacco II Cases, supra*, at p. 324; see *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 232 [46 Cal.Rptr.3d 57, 138 P.3d 207].) The court held that a class representative pursuing a fraud theory must be capable of demonstrating traditional standing in terms of alleging actual injury and causation, including actual reliance on acts of unlawful or fraudulent competition. However, a broader rule was used for the required standing showing for a potential class member in such a fraud case. (*In re Tobacco II Cases, supra*, at pp. 319–324, 325, fn. 17.)

In the case before us, we are mindful of the Supreme Court's admonition that the recent procedural modifications to the statute concerning standing " 'left entirely unchanged the substantive rules governing business and competitive conduct. Nothing a business might lawfully do before Proposition 64 is unlawful now, and nothing earlier forbidden is now permitted.' " (*In re Tobacco II Cases, supra*, 46 Cal.4th 298, 314.)

In our case, there should be no difficulty in analyzing UCL standing rules as of the date of all of the events that allegedly occurred, including the 2007 to 2008 efforts to obtain a deficiency judgment. We disagree with cross-defendants that the only relevant time period for assessing standing and/or accrual of a statutory cause of action is 2003, when the defective NOI was sent. Rather, Appellant should be allowed to make a greater effort to plead that she did not incur actual injury until the 2007 to 2008 attempts to enforce the allegedly inadequate NOI were made, through the demand letter and judicial procedures to obtain a deficiency judgment. That would not amount to splitting her cause of action, where the NOI procedure serves two separate

statutory purposes: permitting reinstatement, and/or allowing a deficiency judgment, if proper notice was given. (See *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622–1623 [2 Cal.Rptr.2d 796].) This is not a case of a plaintiff resting upon her rights. (*Davies, supra,* 14 Cal.3d at p. 515.)

 Moreover, we think that the Supreme Court's analysis of standing of a class representative to assert violations of the Act in *Fireside Bank, supra,* 40 Cal.4th 1069, 1089–1090, goes beyond technical class certification questions. That plaintiff, Gonzalez, was claiming she was deprived of a fair opportunity to redeem the financed vehicle, *"followed by an unlawful demand for payment.* The record demonstrates Fireside Bank repossessed Gonzalez's vehicle and pursued a deficiency judgment against her. She thus has standing to seek a declaration that Fireside Bank *is unlawfully asserting a debt against her,* as well as an injunction against all further collection efforts. The record further shows Gonzalez (or someone on her behalf) made a postrepossession payment against the alleged deficiency; *upon proof she made that payment,* Gonzalez also has standing to seek restitution." (*Id.* at p. 1090, italics added.) From that analysis, we think the courts may be receptive to a properly pled allegation that postponed accrual of a statutory cause of action may exist under circumstances in which a deficiency judgment is sought based upon a defective NOI.

Arguably, as creditors, cross-defendants may have acted in such a manner as to justify delayed accrual of a borrower's cause of action for violations of certain protections in the Act, by waiting a long period of time before filing an action to seek a deficiency, and by doing so based on a defective NOI. Creditors are generally obligated to make demands for repayment within reasonable time periods. (See 3 Witkin, Cal. Procedure, *supra,* Actions, § 532, p. 683.) Where they have not done so, a statutory limitations period may be suspended. (*Ibid.*) Appellant may be able to plead some variation on this theme.

 Nevertheless, this record does not allow us to opine upon the eventual success on the merits of the cause of action pled, nor upon whether class certification can be achieved. Nor can we make any definitive determinations about the applicability of litigation privilege principles to the filing of such a demand letter and deficiency complaint, and we express no opinion on those subjects. (§ 47, subd. (b).) Rather, only because Appellant has demonstrated some possibility of cure of the existing pleading problems through amendment, we conclude the trial court abused its discretion by denying leave to amend. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Further proceedings are warranted for that purpose.

## DISPOSITION

The judgment of dismissal is reversed with directions to the trial court to allow any appropriate application to amend. Costs on appeal are awarded to Appellant.

McConnell, P. J., and Aaron, J., concurred.

On April 26, 2010, the opinion was modified to read as printed above.