Filed 3/21/13; pub. order 4/12/13 (see end of opn.; order received from court 4/22/13)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA RAMIREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BALBOA THRIFT AND LOAN,<br><br>    Defendant and Respondent. | D060057<br><br><br><br>(Super. Ct. No. 37-2009-00099225-<br>  CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard E. L. Strauss, Judge. Reversed and remanded.

Patricia Ramirez appeals from an order denying her motion to certify a class on her unfair competition claim (UCL) against Balboa Thrift and Loan (Balboa). Ramirez's UCL claim is based on Balboa's alleged violation of the Rees-Levering Motor Vehicle Sales and Finance Act (Rees-Levering Act or Act). (Civ. Code, § 2981 et seq.)[1]

Ramirez contends the court erred in denying her class certification motion because the court based its denial on an erroneous legal analysis of the Rees-Levering Act. We conclude this contention has merit and reverse the order. We remand to permit the court

_____

[1]    All further statutory references are to the Civil Code unless otherwise specified. For readability, we omit the word subdivision when referring to the Act's subdivisions.

to consider the propriety of the class certification motion without the improper legal analysis.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, Ramirez purchased an automobile from a Honda dealer under a conditional sale contract obligating her to make monthly payments. As part of the purchase, Ramirez filled out a credit application. Shortly after the purchase, the dealer assigned the contract to Balboa. During the next three years, Ramirez often missed required payments. In about May 2009, Ramirez stopped making payments and voluntarily surrendered her vehicle to Balboa.

After the surrender, on July 6, 2009, Balboa sent Ramirez a "Notice of Intention to Dispose of Motor Vehicle" (NOI), notifying her that it intended to sell the vehicle. The NOI stated that Ramirez had the right to redeem the vehicle by paying the total outstanding amount due ($19,420.55) or she had the right to reinstate the installment contract and obtain a return of the vehicle. With respect to the reinstatement right, the NOI stated that Ramirez must pay $1,567.03 within 15 days of the notice date (or request an extension) and "You must *also* pay any payment, fees, or charges that comes due within the reinstatement period." (Italics added.) The notice also stated that "To learn the exact amount you must pay, call us at the telephone number stated above."

Ramirez did not make any efforts to redeem the vehicle or reinstate the contract.

More than 60 days after sending the NOI, on September 17, 2009, Balboa sent a letter to Ramirez notifying her that her vehicle had been sold for $6,187.50, and after deducting the sale proceeds and related charges, there was a balance of $5,574.65. The

2

letter stated: "You are required to pay the remaining balance and demand is hereby made upon you to contact the undersigned by: October 4, 2009. [¶] If you do not respond to this legal demand as requested, we may be obligated to institute litigation to liquidate this balance, and you may be assessed all costs and fees."

About one week later, Ramirez sent Balboa $25, which she said was a payment on the deficiency balance. Soon after, Ramirez's credit report reflected her loan default and voluntary surrender of the vehicle, and that a deficiency of $3,344 was "written off."[2]

Several days later, on September 28, 2009, Ramirez filed a class action lawsuit against Balboa, alleging that Balboa engaged in an unlawful, unfair, and fraudulent business practice based on its violation of the Rees-Levering Act. She alleged Balboa violated the Act because the NOI sent to her did not specifically include the "conditions precedent" to contract reinstatement. (See *Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889 (*Juarez*).) Specifically, Ramirez alleged that Balboa "failed to inform [her] of all amounts that [she] must pay to [Balboa] to cure the default, including additional monthly payments coming due after the date of the NOI but before the end of the notice period, as well as any late fees or other fees and the amount of those fees. [Balboa] also failed to tell [Ramirez] the names and addresses of the third parties that had to be paid in order to reinstate the subject vehicle, and the amounts that must be paid to those third parties in order to reinstate the subject vehicle." She alleged that she has been

---

[2]     There is no explanation in the record for the difference between this amount and the deficiency amount identified in Balboa's letter.

injured based on the $25 payment and the fact that Balboa reported the "deficiency claim to credit bureaus."

Ramirez brought the action on behalf of the following class: "All California residents whose vehicles were repossessed by or voluntarily surrendered to [Balboa] or its agents pursuant to a conditional sales contract and against whom [Balboa] has asserted a deficiency claim during the period beginning four years before the filing of this action to the date of class certification. This class excludes all [Balboa] employees . . . and all persons whose conditional sales contract obligations have been discharged in bankruptcy."

Ramirez sought various remedies, including: (1) a determination that the NOI failed to comply with the Act and therefore Balboa "lost the right to assert a deficiency claim"; (2) restitution to class members "based on the amount of money each class member paid on [Balboa's] invalid deficiency claims during the relevant period"; and (3) an injunction prohibiting Balboa from attempting to collect or recover on invalid deficiency claims.

Balboa answered the complaint and filed a cross-complaint alleging a single breach of contract cause of action, claiming Ramirez failed to pay the amounts owed on the contract and seeking a deficiency judgment of $13,313.90.

Balboa then moved for summary judgment and/or summary adjudication on the complaint, asserting that as a matter of law Ramirez could not prevail on her UCL claim because Balboa had a legal basis under section 2983.3(b)(1) to have denied her reinstatement right based on false statements she made on her credit application in 2006.

4

Ramirez opposed the motion, asserting that Balboa's *legal argument*—that it could successfully defend the UCL claim based on a retroactive denial of her reinstatement right—was unsupported by the Rees-Levering Act, and, in any event, the facts showed that she did not make any false statements on her credit application. After reviewing the parties' papers and factual submissions, the court did not rule on the legal argument, but denied Balboa's motion based on its finding that triable issues of fact exist as to whether the statements made on Ramirez's credit application were truthful.

Ramirez then filed a class certification motion, seeking to certify the proposed class of California residents whose vehicles were repossessed by or voluntarily surrendered to Balboa. Based on Balboa's interrogatory response as to how many individuals fall within the class definition, Ramirez asserted there were at least 2,400 individuals in the proposed class.

In her supporting papers, Ramirez addressed each of the elements of a class certification motion. With respect to the predominance issue, Ramirez argued that common legal and factual issues would predominate because the *Juarez* court interpreted the Rees-Levering Act to require that, as a precondition to seeking a deficiency, a creditor must issue an NOI specifically identifying all conditions precedent to reinstatement, and Balboa's "NOIs uniformly failed to give consumers these conditions precedent to reinstating their loans," including "how much they must pay to reinstate their loans and the 'names and addresses of those who are to be paid.' " (See *Juarez, supra*, 152 Cal.App.4th at pp. 904-912.) Ramirez also argued that the requested injunctive and restitutionary relief requires the resolution of common factual and legal questions.

5

Balboa opposed the motion on numerous grounds, including: (1) individual legal and factual issues predominate among class members; (2) Ramirez is an inadequate class representative; (3) Ramirez did not incur an "injury" within the meaning of the UCL's standing requirement; (4) Ramirez's claims were not typical; and (5) class treatment is not superior under the totality of the circumstances.

With respect to the first (predominance) issue, Balboa argued primarily that there were eight different versions of the NOI during the class period, many of which raise different legal and factual issues regarding whether the NOI complied with the Rees-Levering Act, and therefore the court would be required to undertake an individual analysis of each NOI to determine the class member's recovery right. Balboa also identified several other individual issues that would make the class action unmanageable. Of particular relevance here, Balboa argued that many class members received NOI's that denied them a reinstatement right, and, with respect to the class members who received an NOI providing a reinstatement right, the court would be required to engage in an individual analysis of each class member's entitlement to recover because Balboa had the right to assert an affirmative defense as to each class member concerning whether he or she fell within an exception identified in section 2983.3(b).

Balboa additionally proffered evidence indicating that although Balboa's total outstanding deficiency balance is approximately $20 million, Balboa does "not collect on over 99.5 % of [the] deficiencies. . . ." Balboa's vice-president explained in a declaration that "after we send the notice of deficiency and a couple of months go by, except in the rare occasion, Balboa does not pursue the customer o[n] the deficiency balance. . . ."

6

According to the evidence, the total amount collected on deficiencies from all the NOI's sent during the class period was $170,341.57.

After considering the parties' arguments and submissions, the court issued a tentative ruling stating: "Ramirez's motion to certify the class is denied. Individual issues of fact predominate over common questions of fact. Specifically, it is unclear whether there were grounds to deny reinstatement as to each individual class member pursuant to Civil Code section 2983.3(b)(1)."

During oral argument, Ramirez's counsel argued that the court's conclusion was based on a faulty legal premise—that the section 2983.3(b)(1) exception (pertaining to misrepresentation on a credit application) allows a creditor to obtain a deficiency even if the exception was not identified in the NOI sent to the buyer.

Balboa's counsel countered that the court's reliance on section 2983.3(b)(1) to show the existence of individual factual issues was proper because Balboa had the ability to raise this statutory misrepresentation defense "as a matter of due process." Counsel also noted it had identified many other individual issues and discussed the fact that Balboa had repeatedly modified its standard NOI form and had used eight different versions of the NOI during the class period. Balboa's counsel also argued that Ramirez did not sustain sufficient injury to show standing under the UCL claim, but the court specifically stated that it was not making "any determination" on that issue, stating "I saw that in the documents, but I don't think that's part of this analysis."

In response to defense counsel's reliance on the different versions of Balboa's NOI form, Ramirez's counsel asserted that the different versions would not require an

7

individual analysis because "each of the different iterations . . . are defective in the same way," including that "[t]hey [require payment of] storage charges and additional payments that come due and [these amounts] are not stated in those NOIs. . . ." Ramirez's counsel also clarified that the "persons who were denied reinstatement [in the NOI] are not in the class. The class includes [only] those persons who received an NOI that allowed them reinstatement."

At the conclusion of the arguments, the court stated: "I appreciate everybody's presentations. Not an easy case. I still don't think I can certify this as a class. There's too many individual issues in this. I'm going to confirm the tentative ruling."

The court thereafter entered its final order stating that "Plaintiff's Motion for Class Certification is DENIED pursuant to the reasons stated on the record and the Court's tentative ruling on May 5, 2011, individual issues of fact predominate over common questions of fact. Specifically, it is unclear whether there were grounds to deny reinstatement as to each individual class member pursuant to Civil Code section 2983.3(b)(1)."

Ramirez appeals.

DISCUSSION

I. *Class Action Certification Principles*

" 'Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress.' " (*Richmond v. Dart Industries, Inc.*

8

(1981) 29 Cal.3d 462, 469; *Seastrom v. Neways, Inc.* (2007) 149 Cal.App.4th 1496, 1500.)   However, "because group action . . . has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' "  (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*); *Seastrom, supra*, 149 Cal.App.4th at p. 1500.)

"The party seeking certification . . . must establish the existence of an ascertainable class and a well-defined community of interest among the class members.  [Citation.]  The community of interest requirement embodies three factors:  (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."  (*Richmond v. Dart Industries, Inc.*, *supra*, 29 Cal.3d at p. 470; see also Code Civ. Proc., § 382.) The proponent must show the "class action is superior to individual lawsuits or alternative procedures for resolving the controversy."  (*Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1204; accord *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.)

On the issue whether common issues predominate in the litigation, a court must "examine the plaintiff's theory of recovery" and "assess the nature of the legal and factual disputes *likely to be presented*."  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1025 (*Brinker*), italics added.)  The court may consider the elements of the claims and defenses, but should not rule on the merits unless necessary to resolve the certification issues.  (*Ibid.*; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th

9

1096, 1106; *Linder, supra*, 23 Cal.4th at pp. 439-440.) "The 'ultimate question' . . . is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Brinker, supra*, at p. 1021.) In conducting this analysis, a "court must examine the allegations of the complaint and supporting declarations [citation], and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Id.* at pp. 1021-1022, fn. omitted.)

Trial courts " 'are ideally situated to evaluate the efficiencies and practicalities of permitting group action' " and therefore are " 'afforded great discretion' " in evaluating the relevant factors and in ruling on a class certification motion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326; accord *Brinker, supra*, 53 Cal.4th at p. 1022.) "A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]" (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089; see *Sav-On, supra*, at pp. 326-327.)

On appeal from the denial of class certification, we review only the reasons given by the trial court for its ruling. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843-844; accord *Bartold v. Glendale Federal Bank* (2000) 81

10

Cal.App.4th 816, 829 (*Bartold*).) "Appeal of an order denying class certification 'presents an exception to the general rule on review that we look only to the trial court's result, not its rationale.' [Citation.] Erroneous legal assumptions or improper criteria may require reversal 'even though there may be substantial evidence to support the court's order.' [Citation.]" (*Caro v. Procter & Gamble Co*. (1993) 18 Cal.App.4th 644, 655.) "In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial." (*Bartold, supra*, 81 Cal.App.4th at p. 829.) However, " '[a]ny valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder, supra*, 23 Cal.4th at p. 436; see *Kaldenbach,* 178 Cal.App.4th at pp. 843-844.)

Under these principles, if a trial court bases its denial of class certification on an incorrect legal analysis, a reviewing court must reverse and remand, unless the trial court independently relied on at least one other legally valid and factually supported ground. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [when a trial court's decision rests on an error of law, that decision is an abuse of discretion]; *Fletcher v. Security Pacific Nat. Bank* (1979) 23 Cal.3d 442, 454 [reversal and remand warranted where trial court erroneously held that an unfair trade practice class action required proof of each individual borrower's lack of knowledge]; *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 187 [reversing court order denying class certification where "trial court used improper criteria and made erroneous legal assumptions"]; *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939 ["[w]e will reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions,

11

even if substantial evidence supported the order"]; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 534 [denial of motion to certify class reversed where trial court erroneously concluded that the defense of unclean hands was available in a UCL action based on the violation of certain Insurance Code sections].)

## II. *The UCL*

In her complaint, Ramirez alleged a single cause of action under the UCL. The UCL prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. (Bus. & Prof. Code, § 17200.) It embraces anything that can properly be called a business practice and that is forbidden by law. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.) The UCL " 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Ibid.*)

Ramirez's UCL claim is based on her allegation that Balboa violated the Rees-Levering Act by failing to comply with the Act's requirement that an NOI contain the specific "conditions precedent" to reinstatement of her vehicle loan. (§ 2983.2(a)(2).) She sought to certify a class of individuals whose vehicles were repossessed by or surrendered to Balboa and against whom Balboa asserted a deficiency claim. She claimed that with respect to this class of persons, Balboa violated the Rees-Levering Act in identical ways and thus common issues would predominate. She also alleged that she had standing because she suffered monetary injury in the form of her $25 payment and a negative report on her credit report.

In analyzing whether the court erred in denying certification of the class, we first summarize the relevant provisions of the Rees-Levering Act. We then examine whether

12

the court's stated reasons for denying the motion were based on a correct legal analysis and supported by substantial evidence.

### III. *The Rees-Levering Act*

The Act provides detailed rules governing motor vehicle conditional sale contracts such as the one signed by Ramirez. (§ 2981 et seq.; see *Juarez, supra*, 152 Cal.App.4th at p. 894.) The Act's purpose is "to provide more comprehensive protections in financing for the unsophisticated motor vehicle consumer." (*Salenga v. Mitsubishi Motors Credit of America, Inc.* (2010) 183 Cal.App.4th 986, 998 (*Salenga*), disapproved on other grounds in *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196-1197.)

Two code sections of this statutory scheme are of particular relevance in understanding Ramirez's claim: section 2983.2 and section 2983.3.

### A. *Section 2983.3*

Section 2983.3 governs a party's right to reinstate a loan upon the buyer's default *after a repossession or voluntary surrender*. Under section 2983.3, "[i]f after default by the buyer, the seller or holder repossesses or voluntarily accepts surrender of the motor vehicle, any person liable on the contract shall have a right to reinstate the contract and the seller or holder shall not accelerate the maturity of any part or all of the contract prior to expiration of the right to reinstate, unless the seller or holder reasonably and in good faith determines that any of the following has occurred . . . ." The statute then sets forth six specific exceptions to the reinstatement right, including the one contained in section 2983.3(b)(1): "The buyer or any other person liable on the contract by omission or

13

commission intentionally provided false or misleading information of material importance on his or her credit application."

Under this code section, if the seller/holder does not "reasonably and in good faith" determine one of the exceptions applies, the buyer has a right to reinstate and if the buyer wishes to do so, the buyer must reimburse the seller for all costs, including the defaulted payments, applicable delinquency charges, and "all reasonable and necessary collection and repossession costs and fees incurred, including attorney's fees and legal expenses expended in retaking and holding the vehicle."  (§ 2983.3(d)(1), (5).)  Although these costs to reinstate may be substantial, "the option of reinstating a contract is often preferable to redemption, because reinstatement allows the buyer to recover the car without having to pay the full balance due on the contract . . . ."  (*Juarez, supra*, 152 Cal.App.4th at p. 894.)

B.  *Section 2983.2*

Section 2983.2 governs a creditor's *notice obligations* after a repossession.  (See *Juarez, supra*, 152 Cal.App.4th at p. 899.)  The code section requires a creditor to provide the buyer with a notice of intention (NOI) to dispose of the repossessed vehicle. (§ 2983.2(a).)  Under the statutory provisions, the NOI must conform to specific mailing requirements, must be given within 60 days following repossession, and must provide extensive information on numerous subjects (set forth in nine separate paragraphs). (§ 2983.2(a).)  Under section 2983.2(a)(2), this notice must include information about the reinstatement right, including the timing of this right and "all the conditions precedent

14

thereto or that there is no right of reinstatement and provides a statement of reasons therefor."

In *Juarez*, we interpreted the statutory requirement contained in section 2983.2(a)(2) that the NOI must identify all " 'conditions precedent' " to reinstatement of the contract. (*Juarez, supra*, 152 Cal.App.4th at pp. 899-912.) We held the NOI must "provide a level of specificity as to the conditions precedent to reinstatement sufficient to inform the buyer—without need for further inquiry—as to exactly what the buyer must do to cure the default. Thus, the statute requires that a creditor inform the consumer of any amounts the buyer must pay to the creditor and/or to third parties and provide the buyer with the names and addresses of those who are to be paid. The creditor must also inform the consumer regarding any additional monthly payments that will come due before the end of the notice period, as well as of any late fees, or other fees, the amount(s) of these additional payments or fees, and when the additional sums will become due." (*Id.* at pp. 904-905.) In so holding, we acknowledged "there may be instances in which the creditor does not possess information about the amount a buyer must pay to a third party to satisfy a condition precedent to reinstatement." (*Id.* at pp. 908-909.) But we said "the creditor must provide the buyer with *all* of the relevant information it possesses and/or information it has the ability to discern, concerning precisely what the buyer must do to reinstate his or her contract." (*Id.* at p. 909.)

In *Juarez,* as here, a car buyer whose vehicle was repossessed brought a class action alleging the creditor violated the UCL by failing to comply with the Rees-Levering Act's requirements. (*Juarez, supra*, 152 Cal.App.4th at pp. 896-898.) After the court

15

certified the class, the court granted summary judgment in the creditor's favor based on the court's conclusion that the NOI satisfied statutory requirements and thus the creditor did not engage in an unlawful, unfair or deceptive practice within the meaning of the UCL. (*Id.* at pp. 898-899.) This court reversed, holding the NOI did not "provide a level of specificity as to the conditions precedent to reinstatement sufficient to inform the buyer—without need for further inquiry—as to exactly what the buyer must do to cure the default." (*Id.* at pp. 904, 912.) We thus remanded for the trial court to consider the class claims under all three prongs of the UCL. (*Id.* at p. 912 & fn. 13.)

We have since reaffirmed that a buyer may potentially recover under the UCL for claimed violations of the Rees-Levering Act's NOI notice requirement. (See *Salenga, supra*, 183 Cal.App.4th at pp. 998-1002.) The California Supreme Court has additionally upheld the certification of class claims based on a violation of the Rees-Levering Act's NOI requirements. (See *Fireside Bank v. Superior Court, supra*, 40 Cal.4th at p. 1076 [class claim under the Act and the UCL "on behalf of all persons who had received postrepossession notices . . . in which the listed redemption amount [improperly] failed to subtract the credit for unearned finance charges"].)

### IV. *Analysis*

In denying Ramirez's class certification motion, the court stated: "[I]ndividual issues of fact predominate over common questions of fact. Specifically, it is unclear whether there were grounds to deny reinstatement as to each individual class member pursuant to Civil Code section 2983.3(b)(1)."

16

Ramirez challenges the court's reliance on section 2983.3(b)(1) to deny her class certification motion. We agree this ground was not a proper basis for denying class certification. The court's conclusion was based on an improper legal assumption, i.e., that Balboa would be entitled to assert this statutory exception as a valid affirmative defense to the UCL claim alleged by class members who *were* given a reinstatement right in the NOI.[3]

Under section 2983.3, a defaulting buyer whose car has been repossessed by or voluntarily surrendered to a creditor must be given the opportunity to reinstate the contract, absent proof of certain statutory circumstances, including that the buyer (1) "intentionally provided false or misleading information of material importance on his or her credit application"; (2) concealed the motor vehicle from the creditor; (3) committed or threatened to commit acts of destruction or failed to take care of the vehicle in a reasonable manner; (4) committed, threatened to commit, or attempted to commit criminal acts of violence against the seller/holder or its agent; or (5) the buyer knowingly used the vehicle in connection with the commission of a criminal offense. (§ 2983.3(b)(1)-(5).) "Exercise of the right to reinstate the contract shall be limited to once in any 12-month period and twice during the term of the contract." (§ 2983.3(c).)

---

3     Although a court should avoid addressing the merits of an issue in the context of a class certification motion, a court may consider the merits where, as here, a class certification issue is necessarily "intertwined" with the merits of the case. (See *Fireside Bank v. Superior Court, supra*, 40 Cal.4th at pp. 1091-1092; *Linder, supra*, 23 Cal.4th at p. 443; *Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 151-152.)

Although there is no specific time limit contained in section 2983.3 for making the determination regarding a buyer's reinstatement right, section 2983.2 sets forth strict deadlines and notice requirements if the seller intends to or does seek a deficiency. Of relevance here, section 2983.2 states: "Except as provided in Section 2983.8 [pertaining to mobilehome sales], those persons shall be liable for any deficiency after disposition of the repossessed or surrendered motor vehicle *only if* the notice prescribed by this section *is given within 60 days of repossession or surrender and* does *all* of the following: [¶] . . . [¶] (2) States *either* that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice and all the conditions precedent thereto *or* that there is no right of reinstatement and provides a statement of reasons therefor." (§ 2983.2(a)(2), italics added.)

Under this subsection, a seller *cannot* recover a deficiency unless the NOI specifically and timely notifies the buyer of the conditions precedent to loan reinstatement OR timely notifies the buyer that there is no right of reinstatement *and* provides a statement of reasons for this conclusion. Reading together sections 2983.2 and 2983.3, a seller/holder who wishes to preserve its rights to claim a deficiency must determine within a 60-day period after repossession whether a buyer is entitled to a reinstatement, and then notify the buyer of this decision. Given the Legislature's manifest intent to set forth the exclusive process for creditors to obtain a deficiency balance after a vehicle repossession or surrender, there is no room for reading additional exceptions into the statutory scheme. The statutes cannot be reasonably interpreted to allow a creditor who failed to give timely notice of a statutory exception to the mandatory reinstatement

18

right to later alter its position and retroactively deny reinstatement, regardless whether the retroactive denial is for affirmative or defensive purposes. Any other conclusion would require that we ignore the plain language of sections 2983.2(a)(2) and 2983.3(b).

In asserting its position, Balboa does not rely on the statutory language, but instead argues that a denial of its right to a deficiency judgment would violate its constitutional due process rights. In particular, Balboa argues that "it would be denied due process if [after the 60-day period] it was not allowed to investigate and litigate each customer's right to reinstatement. . . . Discovery to each class member's credit application would be required to determine if they also lied on the credit application. It would violate Defendant's due process right to deny this discovery and individual defense at trial."

The argument is without merit. The Legislature did not preclude a creditor from raising a fraud defense; it merely required a creditor to raise and discover the applicability of any statutory exception within 60 days of repossession *if it wants a deficiency judgment.* This limitation as to a seller's remedies does not establish a constitutional violation. As recognized by the California Supreme Court, a secured creditor who sells a defaulting debtor's repossessed car may obtain a deficiency judgment, but only by complying with all of the Act's provisions. (*Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215 [" ' "[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." ' "]; see *Salenga, supra*, 183 Cal.App.4th at pp. 998-999, 1000 ["[w]hen a secured creditor pursues a deficiency

19

judgment, it must follow the statutorily prescribed notice procedures of the [Rees-Levering] Act"].)

Moreover, to the extent creditors retain rights to bring affirmative claims (such as fraud) against buyers, these rights exist only during the applicable limitations period. In this case, Balboa did not allege, or seek to assert, a common law fraud claim against Ramirez (or any of the class members), and instead merely sought to rely on a statutory exception (that is not necessarily equivalent to a common law fraud claim) long after the time period had lapsed for asserting the statutory exception.

Equally important for class certification purposes, even assuming the statutory exception could be asserted after the statutory time period had expired, Balboa did not proffer any facts showing that any such exception would apply to any of the other class members. Instead, it merely stated that individual issues would predominate because it should be provided the right to "investigate" each class member to determine whether it could find any facts showing the applicability of any of the statutory exceptions. Without any foundational basis showing that such evidence could or would be discovered, this possibility does not raise a *likelihood* that individual issues would predominate over common issues in the litigation. (See *Brinker, supra*, 53 Cal.4th at p. 1025 [in deciding certification question court must examine the plaintiff's theory of recovery and "assess the nature of the legal and factual disputes *likely to be presented*," italics added].)

Balboa alternatively argues that many other grounds exist for affirming the court's order, including (1) the fact that Balboa issued at least eight different form NOI's during the class period; (2) the fact that Balboa had settled with or obtained judgments against

20

some class members; (3) whether Ramirez's claims were typical of the class; (4) the existence of differing forms of injury among class members; and (5) whether Ramirez's claimed injuries were sufficient to show standing for purposes of a UCL claim.

These arguments raise important issues regarding the propriety of class certification in this case, and it is tempting to consider them in reviewing the court's order. However, based on our review of the court's statements and written order, it is apparent that the court relied primarily if not exclusively on the section 2983.3(b)(1) reinstatement exception to conclude individual issues would predominate. Although the court's final order also refers to "the reasons stated on the record," the court did not identify any other reasons on the record. Moreover, it is unclear on the record before us whether the court would have reached a similar conclusion on the class certification motion absent its reliance on the section 2983.3(b)(1) exception. The court specifically stated at the hearing that it did not view resolution of Ramirez's class certification motion as an "easy case" and stated it was unnecessary to address certain issues Balboa had raised in opposition to the class certification motion. In its final order, the court cited only the section 2983.3(b)(1) statutory exception as the "[s]pecific[]" reason for its order. Further, many of the other grounds for opposing the class certification motion require a factual analysis of the record, a task best performed by the trial judge in the first instance.

On this record, the appropriate disposition is to reverse and remand for the court to consider Ramirez's class certification motion on a proper legal analysis. When a trial court "fail[s] to follow the correct legal analysis when deciding whether to certify a class action, 'an appellate court is required to reverse an order denying class certification . . . ,

21

"even though there may be substantial evidence to support the court's order." ' "  (*Bartold, supra*, 81 Cal.App.4th at pp. 828.)

## DISPOSITION

Order reversed.  The matter remanded for the court to reconsider Ramirez's class certification motion and Balboa's opposition to the motion in a manner consistent with the determinations expressed in this opinion.  Appellant to recover her costs on appeal.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA RAMIREZ, | D060057 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00099225-CU-BT-CTL) |
| BALBOA THRIFT AND LOAN, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion filed March 21, 2013, is ordered certified for publication.

The attorneys of record are:

Anderson, Ogilvie & Brewer, Mark F. Anderson; and Michael E. Lindsey for

Plaintiff and Appellant.

Law Offices of Herbert Hafif, Herbert Hafif, Greg K. Hafif and Michael G.

Dawson for Defendant and Respondent.

McCONNELL, P. J.